UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No.: 17-19455-MAM<br>Lead Case |
| CHARIOTS OF PALM BEACH, INC., | Jointly Administered with<br>17-19458-MAM |
| Debtor. | Chapter 7 |
| _____/ | |
| NICOLE TESTA MEHDIPOUR, Trustee, | Adversary No.: _____ |
| Plaintiff, | |
| v. | |
| ANCHOR COMMERCIAL BANK,<br>FLAGLER BANK, NEXTGEAR CAPITAL,<br>INC., LQD BUSINESS FINANCE, LLC, and<br>NORTH FLORIDA MANGO CREDIT, LLC, | |
| Defendants. | |
| _____/ | |

**COMPLAINT**

Nicole Testa Mehdipour ("Trustee"), as Chapter 7 Trustee for the bankruptcy estates of Chariots of Palm Beach, Inc. ("Chariots") and H & S, Inc. ("H&S") (collectively, the "Debtors"), files this Complaint against Anchor Commercial Bank ("Anchor"), Flagler Bank ("Flagler"), NextGear Capital, Inc. ("NextGear"), LQD Business Finance, LLC ("LQD"), and North Florida Mango Credit, LLC ("North Florida Mango") (collectively, the "Defendants"), and states:

**NATURE OF THE ACTION**

1. The Trustee seeks to surcharge the collateral in which the Defendants claim an interest pursuant to § 506(c) of Title 11 of the U.S. Code (the "Bankruptcy Code"), for the

1

expenses associated with the services rendered by the Trustee and various estate professionals since the Court converted the Debtors' bankruptcy cases to cases under Chapter 7 of the Bankruptcy Code.

2. As outlined below, the Trustee and her court-approved professionals (the "Professionals") made extensive efforts that were necessary for the preservation and enhancement of the collateral in which Defendants claimed competing interests. The Defendants benefited from these services performed by the Trustee and her Professionals, which services were reasonable and necessary costs and expenses of preserving, or disposing of, the property more fully described below.

## PARTIES, JURISDICTION, AND VENUE

3. Trustee is the duly appointed Chapter 7 trustee for the estates of the Debtors.

4. Anchor is a Florida corporation that is authorized to do business in the state of Florida.

5. Flagler is a Florida corporation that is authorized to do business in the state of Florida.

6. North Florida Mango is a Florida limited liability company that is authorized to do business in the state of Florida.

7. NextGear is a Delaware corporation that is authorized to do business in the state of Florida, has substantial and not isolated contacts with the state of Florida and the Southern District of Florida, and otherwise transacts business in the state of Florida.

8. LQD is a Delaware limited liability company that is authorized to do business in the state of Florida, has substantial and not isolated contacts with the state of Florida and the Southern District of Florida, and otherwise transacts business in the state of Florida.

9. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157 of the United States Code.

10. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and 28 U.S.C. § 157(b)(2)(A) and (K).

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1409, as the Debtors' bankruptcy cases are pending before this Court.

## COMMON ALLEGATIONS

**A. The Debtors Fail as Debtors-in-Possession After Allegations of Fraud**

12. On July 27, 2017 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

13. The Debtors' bankruptcy cases are jointly administered in this Court under Case No. 17-19455-MAM (the "Bankruptcy Case").

14. Prior to the Bankruptcy Case and as debtors-in-possession, Chariots was a luxury used car dealership with a single location in West Palm Beach, specializing in the purchase and sale of premium, used automobiles; H&S was a luxury rental car company.

15. The Debtors operated their business at a dealership located at 1822 Upland Road, West Palm Beach, Florida (the "Building").

16. Before the Trustee's appointment in the Bankruptcy Case, Debtors' counsel revealed that he "realized that the Debtors' former principal had defrauded creditors and other third persons and entities." This alleged fraud led to the resignation of Hugh Bate, the former president of the Debtors, and the appointment of Charles Sharoubim as the new president of the Debtor entities and the retention of Michael Phelan of Moecker & Associates as Chief

3

Restructuring Officer. According to counsel, the alleged fraud "allowed the former principal to move inventory from one secured lender to another."

17.   Defendant NextGear described this fraud as a "systematic fraud intended to misrepresent the status of [parties'] collateral" which led to "millions of dollars in collateral to be simply unaccounted for."

### B. Defendants Assert Competing Interests in Debtors' Assets

18.   Alongside these serious allegations of fraud, the Defendants have asserted competing security interests in all, or substantially all, of the Debtors' assets, including the Debtors' vehicles, cash collateral, and accounts.

19.   Indeed, at all times during the Bankruptcy Case, the Defendants have asserted competing liens and/or security interests in the same collateral, which consists of, among other things: (i) the Building; (ii) all personal property of every nature whatsoever within the Building used in connection with the operation of the Building (the "Personal Property"); (iii) all vehicles purchased or acquired (whether at the time of each respective lending arrangement or thereafter acquired) through the various lending arrangements with the Defendants (the "Vehicles"); and (iv) the Debtors' deposit accounts and the cash in the Debtors' deposit accounts (the "Cash Collateral", and, collectively with the Building, the Personal Property, and the Vehicles, the "Collateral").

20.   Anchor, by virtue of a mortgage and security agreement, and a UCC Financing Statement naming Chariots and H&S as debtors filed on January 13, 2012, claims, or may claim, that is has a lien or security interest against (i) the Building, (ii) the Personal Property, (iii) the Vehicles; and (iv) the Cash Collateral.

21. North Florida Mango asserts that it has a second mortgage on the Building by virtue of a second mortgage and security agreement.

22. Flagler claims that it, as lender, entered into a loan agreement in the principal amount of $1,000,000.00, with Chariots, as borrower, whereby Flagler agreed to provide floor plan financing for Chariots to purchase used vehicles to sell to its retail customers, which included a Promissory Note, allegedly secured by a Commercial Security Agreement, Open Ended Line of Credit Agreement, and Personal Guarantees by Debtors' owner, Hugh Bate, and H&S, which were renewed annually, as well as a UCC-1 (filed with the State of Florida and Palm Beach County), and UCC-3 continuation statements. As a result, Flagler claims, or may claim, that is has a lien or security interest against, *inter alia*: (i) the Personal Property, (ii) the Vehicles; and (iii) the Cash Collateral

23. LQD, by virtue of a UCC Financing Statement naming Chariots and H&S as Debtors filed on August 24, 2016 (and as subsequently amended), claims that it holds a security interest in "[a]ll Debtors' assets currently owned or hereafter acquired."

24. NextGear claims that, as of the Petition Date, the balance that Chariots owed to NextGear under various loan agreements was $5,250,258.15, and that the balance H&S owed to NextGear under various loan agreements was $492,009.69, totaling $5,742,267.84. NextGear claims that it holds a blanket security interest with respect to the Debtors' assets.

25. Notwithstanding these foregoing competing claims, NextGear has asserted that it was the Debtors' senior floorplan lender and senior secured creditor, with a first priority security interest on all of the Debtors' assets and properties, including, but not limited to: (i) the Vehicles; (ii) the Personal Property; and (iii) the Cash Collateral. Flagler similarly asserts that it has a first priority security interest with respect to Chariots' assets.

26. The competing security interests—together with multiple pledges of identical collateral by the Debtor to creditors claiming those security interests—led the Debtors to file, on August 23, 2017, an adversary proceeding pursuant to §§ 502 and 506 of the Bankruptcy Code to determine the nature, extent, validity, and priority of such alleged secured interests (the "Lien Adversary").

27. The Debtors continued to operate their businesses as debtors-in-possession from the Petition Date to September 19, 2017, on which date the Court entered an *Order Converting Cases Under Chapter 11 to Cases Under Chapter 7* [ECF No. 265].

28. On September 19, 2017, the Office of the U.S. Trustee filed a *Notice of Appointment of Chapter 7 Trustee* [ECF No. 266] in the Bankruptcy Case, appointing Trustee as the Chapter 7 trustee in the Bankruptcy Case.

29. Following her appointment, the Trustee sought the Court's approval of her retention of the Professionals. Specifically, the Court approved the retention of Tripp Scott, P.A. as the Trustee's general bankruptcy counsel *nunc pro tunc* to September 25, 2017. Following a stipulation for substitution of counsel, the Court thereafter approved the Trustee's retention of Wargo & French, LLP as the Trustee's general bankruptcy counsel *nunc pro tunc* to January 16, 2018.

30. Immediately upon her appointment as Chapter 7 trustee, the Trustee and her court-approved Professionals were thrust into active litigation, which litigation arose necessarily because of the myriad competing claims of the Defendants to the Collateral.

31. On November 21, 2017, NextGear filed a Crossclaim and Third-Party Complaint against the Defendants (among others) in the Lien Adversary, asserting that it held (and holds) a valid first priority perfected security interest in collateralized assets of the Debtors.

32. On February 12, 2018, the Court entered an *Order Granting Dismissal of NextGear's Claims* (the "Dismissal Order") [ECF No. 204] whereby the Court abstained, under 28 U.S.C. § 1334(c) and dismissed the Lien Adversary without prejudice.

33. Following the Dismissal Order, the legal issues that the Debtors initially raised in the Lien Adversary are now being litigated by the Defendants in the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, Case No. 50-2018-CA-002099 (the "State Court Case").

34. On February 16, 2018, NextGear again thrust the estate in litigation concerning the Collateral by filing a three-count complaint against the Trustee and Defendants who may claim an interest in the Collateral, which complaint sought a declaratory judgment regarding the validity, priority, extent, and amount of interest or lien which any Defendant may assert against any or all of the Collateral.

35. According to NextGear, the relief it seeks in the State Litigation "is simple — a determination as to NextGear's interest in the collateral."

36. "Specifically, NextGear seeks (i) a declaratory judgment that NextGear holds a valid, first priority, perfected security interest in the Collateral up to the amount of the Debtors' indebtedness to NextGear, with priority over any alleged lien or right asserted by any defendant with respect to the Collateral; (ii) a determination as to the validity, priority, extent and amount of interest or lien which any defendant may assert against any or all of the Collateral vis-a-vis NextGear's properly perfected first priority security interest; and (iii) foreclosure of NextGear's security interest."

37. On March 20, 2018, Trustee filed her Answer to the Complaint in the State Court Case.

38. In the State Court Case, NextGear and Flagler assert that their security interests in the Collateral are superior to any security interests in such Collateral held by Defendants Anchor, LQD, and any other party that may claim a security interest in the Collateral.

### C. The Efforts of the Trustee and Her Professionals to Preserve and Maintain Collateral

39. Since her appointment, the Trustee and the Professionals rendered valuable services which contributed to the preservation and enhancement of the Collateral.

40. In addition to the Trustee's involvement in the ongoing litigation between and among the Defendants as to their interests in the Collateral, the Trustee and her Professionals have undertaken a costly winding-down of the Debtors' affairs, which winding-down has exclusively benefitted the Defendants.

41. This "winding-down" has been a costly, multi-phase process involving the Trustee, Trustee's staff, and Professionals retained by the Trustee in the Bankruptcy Case that is directly related to the preservation or enhancement of the Collateral.

42. Upon her appointment, the Trustee, Trustee's staff, and the Professionals immediately and continuously made significant efforts to secure, maintain, enhance, dispose of, and preserve the Collateral, which steps in fact benefitted the Defendants. These efforts include, without limitation, the following:

   a. Maintaining the security system at the Building;
   b. Maintaining the utilities at the Building;
   c. Conducting site visits at the Building to ensure security of the Building and inventory therein;
   d. Engaging in numerous communications to and from Florida state regulatory entities concerning the Building, the vehicle inventory at the Building, the Debtors' operation of the Building, the Debtors' operations, and licensing of the Debtors;
   e. Taking and completing an inventory of all vehicles and property within the Building;

    f.  Arranging a site inspection and appraisal with the Defendants of the property within the Building;

    g.  Negotiating the potential purchase and sale of the Building.

    h.  Assisting vehicle purchasers (and victims) by providing information concerning the status of their vehicle titles;

    i.  Undertaking an exhaustive title reconciliation process through which the Trustee and her Professionals reviewed, analyzed, and researched competing claims of one or more of the Defendants and/or vehicle purchasers to vehicles sold, or in the possession of, the Debtors;

    j.  Prosecuting, defending, and participating in the Lien Adversary and State Court Litigation, which cases both primarily involve the disparate claims of the Defendants to the Collateral;

    k.  Implementing, facilitating, and overseeing a Court-approved process for resolving disputes to, or turnover of, titles to various Vehicles;

    l.  Preserving and maintaining the Vehicles, the Building (and the Personal Property therein), and the Cash Collateral;

    m.  Overseeing and facilitating the foreclosure and/or turnover of the Collateral to certain of the Defendants;

    n.  Securing, maintaining, and preventing diminution of value to the Building and Vehicles; and

    o.  Preparing for, and attending, mediation among the Defendants to resolve issues pertaining to the Collateral and the Bankruptcy Case.

43. Additionally, summaries of the time expended and expenses incurred by the Trustee and the Professionals detailing their specific services that benefited specific Collateral items are attached hereto as composite **Exhibit A**, **Exhibit B**, and **Exhibit C**.

## COUNT I
## SURCHARGE OF THE BUILDING PURSUANT TO 11 U.S.C. § 506

44. Trustee re-alleges and incorporates the allegation of Paragraphs 1 through 43 of this Complaint as though fully set forth herein.

45. Defendants Anchor, North Florida Mango, and LQD, hold, or may claim to hold, a lien or other security interest on the Building as of the Petition Date.

46. During the course of the Bankruptcy Case, the Trustee and the Professionals have rendered actual, reasonable, and necessary services to preserve, maintain, and enhance the value of the Building securing the liens of Anchor, North Florida Mango, and LQD.

9

47. These services rendered by the Trustee and the Professionals have directly and actually benefitted Defendants Anchor, North Florida Mango, and LQD, and preserved and enhanced the value of the Building.

48. Trustee is entitled to surcharge the Building to recover the actual, reasonable, and necessary costs and expenses of the services incurred by Trustee and the Professionals in respect of the Building. A summary of the time expended and a description of the services rendered in respect of the Building is set forth on composite **Exhibit A** attached hereto.

49. Therefore, under § 506(c) of the Bankruptcy Code, Trustee is entitled to surcharge the assets of the Debtors that were subject to the liens of Defendants Anchor, North Florida Mango, and LQD as of the Petition Date, as well as their proceeds to the extent that such assets were converted into cash.

**WHEREFORE**, the Trustee respectfully requests entry of an order (i) authorizing the Trustee to surcharge the Building in the amount of $12,746.44 for payment of the Trustee's and Professionals' fees and related expenses incurred, (ii) directing Defendants Anchor, North Florida Mango, and LQD to pay the Trustee the amount surcharged against its collateral, and (iii) granting any other or further relief as is just and proper.

### COUNT II
### SURCHARGE OF THE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 506

50. Trustee re-alleges and incorporates the allegation of Paragraphs 1 through 43 of this Complaint as though fully set forth herein.

51. Defendants NextGear, Flagler, Anchor, and LQD, hold, or may claim to hold, a lien or other security interest on the Cash Collateral as of the Petition Date.

52. During the course of the Bankruptcy Case, the Trustee and the Professionals have rendered actual, reasonable, and necessary services to preserve, maintain, and enhance the value of the Cash Collateral securing the liens of NextGear, Flagler, Anchor, and LQD.

53. These services rendered by the Trustee and the Professionals have directly and actually benefitted Defendants NextGear, Flagler, Anchor, and LQD, and preserved and enhanced the value of the Cash Collateral.

54. Trustee is entitled to surcharge the Cash Collateral to recover the actual, reasonable, and necessary costs and expenses of the services incurred by Trustee and the Professionals in respect of the Cash Collateral. A summary of the time expended and a description of the services rendered in respect of the Cash Collateral is set forth on composite **Exhibit B** attached hereto.

55. Therefore, under § 506(c) of the Bankruptcy Code, Trustee is entitled to surcharge the assets of the Debtors that were subject to the liens of Defendants NextGear, Flagler, Anchor, and LQD as of the Petition Date, as well as their proceeds to the extent that such assets were converted into cash.

**WHEREFORE**, the Trustee respectfully requests entry of an order (i) authorizing the Trustee to surcharge the Cash Collateral in the amount of $2,355.37 for payment of the Trustee's and Professionals' fees and related expenses incurred, (ii) directing NextGear, Flagler, Anchor, and LQD to pay the Trustee the amount surcharged against its collateral, and (iii) granting any other or further relief as is just and proper.

## COUNT III
### SURCHARGE OF THE VEHICLES PURSUANT TO 11 U.S.C. § 506

56. Trustee re-alleges and incorporates the allegation of Paragraphs 1 through 43 of this Complaint as though fully set forth herein.

57. Defendants NextGear, Flagler, Anchor, and LQD, hold, or may claim to hold, a lien or other security interest in the Vehicles as of the Petition Date.

58. During the course of the Bankruptcy Case, the Trustee and the Professionals have rendered actual, reasonable, and necessary services to preserve, maintain, and enhance the value of the Vehicles securing the liens of NextGear, Flagler, Anchor, and LQD

59. These services rendered by the Trustee and the Professionals have directly and actually benefitted Defendants NextGear, Flagler, Anchor, and LQD, and preserved and enhanced the value of the Vehicles.

60. Trustee is entitled to surcharge the Vehicles to recover the actual, reasonable, and necessary costs and expenses of the services incurred by Trustee and the Professionals in respect of the Vehicles. A summary of the time expended and a description of the services rendered in respect of the Vehicles is set forth on composite **Exhibit C** attached hereto.

61. Therefore, under § 506(c) of the Bankruptcy Code, Trustee is entitled to surcharge the assets of the Debtors that were subject to the liens of Defendants NextGear, Flagler, Anchor, and LQD as of the Petition Date, as well as their proceeds to the extent that such assets were converted into cash.

**WHEREFORE**, the Trustee respectfully requests entry of an order (i) authorizing the Trustee to surcharge the Vehicles in the amount of $98,819.00 for payment of the Trustee's and Professionals' fees and related expenses incurred, (ii) directing NextGear, Flagler, Anchor, and LQD to pay the Trustee the amount surcharged against its collateral, and (iii) granting any other or further relief as is just and proper.

Dated this 31st day of August, 2018.

Respectfully Submitted,

**WARGO & FRENCH, LLP**
*Counsel for the Trustee*
201 S. Biscayne Blvd.
Suite 1000
Miami, Florida 33131
Telephone: (305) 777-6000
Facsimile: (305) 777-6001

By:   /s/ *Kristopher E. Aungst*
      Kristopher E. Aungst, Esq.
      Florida Bar No. 0055348
      kaungst@wargofrench.com
      Michael C. Foster, Esq.
      Florida Bar No. 0042765
      mfoster@wargofrench.com
      Angelo M. Castaldi, Esq.
      Florida Bar No. 0119098
      acastaldi@wargofrench.com